# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DALE WETTERLING and MARY WETTERLING, | ) ) ) |
| and | CASE NO.: |
| RONALD MARTENS and JOY MARTENS, | (Formerly Wisconsin Circuit Court La Crosse County No. 2023CV000481) |
| Plaintiffs, | **NOTICE OF REMOVAL** |
| vs. | |
| CITY OF LA CROSSE, a municipal corporation, WISCONSIN MUNICIPAL MUTUAL INSURANCE COMPANY and ABC INSURANCE COMPANY, | |
| Defendants. | |

Defendant, City of La Crosse (the "City"), by and through its undersigned counsel, hereby gives notice of the removal of this action – *Wetterling, et al. v. City of La Crosse, et al.*, La Crosse County Circuit Court Case No. 2023-CV-481[1] – pursuant to 28 U.S.C. §§ 1442(a)(1), 1441(c) and 1446, from the Wisconsin Circuit Court, La Crosse County, to the United States District Court for the Western District of Wisconsin. A copy of the Summons and Complaint filed in La Crosse County is attached as <u>Exhibit A</u> (the "Complaint"). As grounds for removal, the City states as follows:

## INTRODUCTION

Nearly three years ago—on March 4, 2021—the City of La Crosse (the "City") filed a complaint in La Crosse County Circuit Court (Case No. 2021CV000124) against the various

---

[1] The City is also contemporaneously filing a notice of removal in a related action filed by a different class of plaintiffs, *Wetterling, et al. v. City of La Crosse, et al.*, La Crosse County Circuit Court Case No. 2023-CV-480.

manufacturers of aqueous film forming foam ("AFFF") containing per-and polyfluoroalkyl substances (hereinafter "PFAS") related to the Federal Aviation Administration's ("FAA") mandated and required use of PFAS containing AFFF at the La Crosse Regional Airport ("LSE" or the "Airport").  A copy of the complaint filed on March 4, 2021 is attached as <u>Exhibit B</u>.  On April 13, 2021, that case was removed to the U.S. District Court for the Western District of Wisconsin (Case No. 2:21-cv-00243-slc) and then consolidated, along with hundreds of other cases concerning the same PFAS containing AFFF, into Multi-District Litigation ("MDL 2873") assigned to the Honorable Richard M. Gergel of the U.S. District Court for the District of South Carolina.[2]  The above-captioned case should likewise be removed to this Court and thereafter transferred to MDL 2873 because it involves common questions of law and fact, such that its centralization with the other MDL 2873 cases is appropriate.

This case, brought by residents who live around the Airport and who have alleged various damages related to PFAS, may be removed from state court based on two separate jurisdictional grounds.  First, removal is permissible pursuant to 28 U.S.C. § 1442(a)(1) because the City was "acting under" the color of a federal officer and in accordance with federal direction when using the FAA's mandated PFAS containing AFFF at the Airport.  Second, removal is permissible under 28 U.S.C. § 1441(c) because federal law and the FAA's regulatory authority pursuant to 49 U.S.C. § 14501(c) and 49 U.S.C. § 41713(b) have completely preempted the regulation and operation of an airport like LSE and the FAA's mandated use of PFAS containing AFFF raises substantial questions of federal law.

---

[2] Judge Gergel issued Case Management Order No. 1 (providing details regarding case consolidation and related organizational matters) nearly five years ago, on January 2, 2019.  The U.S. District Court for the District of South Carolina maintains a separate webpage regarding MDL 2873, which is available at https://www.scd.uscourts.gov/mdl-2873/index.asp (last accessed December 5, 2023).

The FAA has historically required Part 139 airport operators,[3] such as the City, to stock and perform regular testing and training exercises using FAA-approved fire extinguishing agents. Beginning in 1988, AFFF was designated as one of the fire extinguishing agents FAA required to be stocked, tested, and trained with at Part 139 airports like LSE.  14 C.F.R. § 139.317 (1988).  On July 8, 2004, the FAA went even further, issuing Advisory Circular 150/5210-6D, which required that "AFFF agents must meet the requirements of Mil-F-24385F"—the military's specification for the procurement of AFFF.[4]  Declaration of Ian Turner ("Turner Dec."), Ex. 4 at 4.  These requirements remained in place until June 2019 when the FAA issued Part 139 Policy Guidance #108, which relaxed the testing requirements imposed on Part 139 airports with respect to AFFF, and only recently has the FAA—at the express direction of Congress—adopted a formal plan to "ensure the orderly transition from current to replacement firefighting foam."  *See* Part 139 Policy Guidance #108, *Discharge of Aqueous Film Forming Foam (AFFF) at Certificated Part 139 Airports* (June 20, 2019); FAA, *Aircraft Firefighting Foam Transition Plan*, at 5 (May 8, 2023).[5]

During the relevant time period, the manufacturers of AFFF and its components produced, marketed, distributed, and sold PFAS-containing AFFF to Part 139 airports like LSE, knowing full well – but not informing users, such as the Airport – that these toxic compounds would be released

---

[3] 14 CFR Part 139 requires the FAA to issue airport operating certificates to airports that (i) serve scheduled and unscheduled air carrier aircraft with more than 30 seats; (ii) serve scheduled air carrier operations in aircraft with more than 9 seats but less than 31 seats; and (iii) the FAA Administrator requires to have a certificate.  To obtain an airport operating certificate, an airport must agree to certain operational and safety standards and provide for such things as firefighting and rescue equipment.

[4] Although the preamble indicated that the circular was for guidance only, on February 8, 2006, the FAA issued a CertAlert clarifying that the MilSpec AFFF requirement was, in fact, mandatory and that "[a]ny AFFF purchased after July 1, 2006 by an airport operator certified under Part 139 must meet [Mil-F-24385F]." FAA Part 139 CertAlert 06-02, Aqueous Film Forming Foam (AFFF) meeting MIL-F-24385 (Feb. 8, 2006).

[5] *See* https://www.faa.gov/sites/faa.gov/files/FAA_Aircraft_F3_Transition_Plan_2023.pdf.

3

into the surrounding environment during FAA-mandated fire testing and training exercises. For this reason, the City filed suit in 2021 against those manufacturers seeking to hold them responsible for PFAS contamination at LSE resulting from such testing and training exercises. That case has since been consolidated, and is currently pending with hundreds of similar suits in MDL 2873 before Judge Richard Gergel in the U.S. District Court for the District of South Carolina. Because the above-captioned complaint and the City's 2021 complaint allege harm caused by the same PFAS containing AFFF, the City will also submit a Notice of Potential Tag-Along with the Judicial Panel on Multidistrict Litigation ("JPML").

## BACKGROUND & PROCEDURAL HISTORY

On March 4, 2021, the City, a Wisconsin municipal body that owns and operates its water utility, fire department, and the LSE sued the manufacturers of AFFF and its components[6] in the State of Wisconsin Circuit Court for La Crosse County. *See* Notice of Removal, *City of La Crosse v. The 3M Company, et al.*, 2:21-cv-00243-slc (W.D. Wis. April 12, 2021), ECF No. 1. The City's Complaint alleged that the manufacturing defendants long knew – but did not inform users – that the normal, intended use of AFFF for training and active incident response would release PFAS into the environment, where these compounds would migrate into drinking water supplies. On April 12, 2021, defendants Chemguard Inc. and Tyco Fire Products LP removed the case to the Western District of Wisconsin, and thereafter filed a Notice of Potential Tag-Along Action with the United States Judicial Panel on Multidistrict Litigation ("JPML"). *See id*. On May 6, 2021,

---

[6] The City's Complaint names as defendants The 3M Company, AGC Chemicals Americas Inc., Amerex Corporation, Arkema, Inc., Archroma Management LLC, BASF Corporation, Buckeye Fire Equipment Company, Carrier Global Corporation, ChemDesign Products Inc., Chemguard, Inc., Chemicals, Inc., Clariant Corporation, Corteva, Inc., DeepWater Chemicals, Inc., DuPont de Nemours, Inc., Dynax Corporation, E.I. DuPont de Nemours and Company, Kidde-Fenwal, Inc., Nation Ford Chemical Company, National Foam, Inc., The Chemours Company, The Chemours Company FC, LLC, and Tyco Fire Products LP (collectively, the "AFFF/Component Product Defendants"). *See* Ex. B.

4

the City's case was formally transferred into MDL 2873, where it is currently before Judge Richard Gergel in the District of South Carolina. *See id.*, ECF No. 4.

The City is one of many plaintiffs in MDL 2873 that include airports, public drinking water providers, and fire-fighting training facilities, among other entities, across the United States that filed similar suits against the AFFF/Component Product Defendants and are now before MDL 2873. In these actions, as in the City's case, plaintiffs generally allege that AFFF products used at airports, military bases, or certain industrial locations caused the release of PFOA or PFOS into local groundwater and contaminated drinking water supplies, that the AFFF/Component Product Defendants should not have used certain PFAS compounds in AFFF given the likelihood that PFAS would contaminate drinking water supplies and other property and present potential environmental and human health risks, and that the AFFF/Component Product Defendants knew about potential risks but concealed that information from everyone (including federal and state regulators). With some minor variations, the same group of AFFF/Component Product Defendants are named as defendants in each action. *See In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, 357 F. Supp. 3d 1391 (U.S. Jud. Pan. Mult. Lit. 2018); *see also, e.g.*, Complaint & Notice of Removal, *City of La Crosse v. The 3M Company, et al*, No. 3:21-cv-00243-slc (W.D. Wis. April 12, 2021); Complaint & Notice of Removal, *Sanford Airport Authority v. 3M Company* et al., No. 2:20-cv-00213-RMG (D.S.C. Dec. 12, 2019), ECF No. 1; Notice of Removal, *Nantucket Memorial Airport Commission v. The 3M Company et al.*, No. 2:21-cv-03893-RMG (D.S.C. Nov. 8, 2021), ECF No. 1; Notice of Removal, *County of Chemung-Elmira Corning Regional Airport v. The 3M Company et al*, No. 2:22-cv-01790-RMG (D.S.C. May 19, 2022), ECF No. 1.

In addition to these cases brought by the various airports and similar entities, numerous private plaintiffs have brought suit against the AFFF/Component Product Defendants and those

5

have similarly been sent to the MDL. *See* Conditional Transfer Order, *Hyttinen v. The 3M Company, et al.,* No. 3:32-cv-707-WMC (Oct. 31, 2023); Conditional Transfer Order, *Hyttinen v. The 3M Company, et al.,* No. 3:32-cv-706-WMC (Oct. 31, 2023).

In ordering the creation of MDL 2873, the JPML observed that "[t]hese actions thus share factual questions concerning the toxicity of PFOA and PFOS and their effects on human health; the chemical properties of these substances and their propensity to migrate in groundwater supplies; the knowledge of the AFFF manufacturers regarding the dangers of PFOA and PFOS; their warnings, if any, regarding proper use and storage of AFFFs; and to what extent, if any, defendants conspired or cooperated to conceal the dangers of PFOA and PFOS in their products." *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F.Supp.3d at 1394 (U.S. Jud. Pan. Mult. Lit. 2018). "Centralization will [thus] eliminate duplicative discovery; prevent inconsistent pretrial rulings (including with respect to discovery, privilege, and *Daubert* motion practice); and conserve the resources of the parties, their counsel, and the judiciary." *Id*.

The JPML found that although the actions include "personal injury cases brought by individuals who allegedly drank contaminated groundwater, class actions seeking to represent individuals who live near sites where AFFF was used and assert claims for medical monitoring and property damage, and cases brought by water authorities and other governmental entities seeking costs for environmental remediation or upgrades to water treatment systems," they all allege "the same mode of groundwater contamination caused by the same product" and "will involve significant and overlapping discovery of the AFFF manufacturers and their products." *Id*. at 1395.

Just this past June, the JPML found that water consumers' claims against a public water provider should be consolidated in MDL 2873 where "[the consumers'] own water provider is

6

alleging that the water contamination at issue in both" the consumers' lawsuit and the water provider's lawsuit "was caused, at least in part, by AFFFs." Ex. C, JPML Transfer Order, *In re: Aqueous Film-Forming Foams Prods. Liab. Litig.*, MDL No. 2873 (Doc. 1927) (Jud. Pan. Multi. Litig. June 5, 2023) (not reported). These cases "substantially overlap" and "necessarily will involve common questions of fact regarding, for instance, the nature of the alleged PFAS contamination and its source(s)." *Id*. at 2.

On October 12, 2023, Plaintiffs Dale and Mary Wetterling and Ronald and Joy Martens (collectively "Plaintiffs") filed two separate suits by different classes of plaintiffs, with the same counsel, alleging similar claims against the City of La Crosse (the "City") and the Wisconsin Municipal Mutual Insurance Company ("WMMIC") in La Crosse County Circuit Court, under Case No. 2023-cv-000480 and Case No. 2023-cv-00481. The City was served on November 6, 2023. The City does not need WMMIC's consent in either action to remove to this Court. Venue is proper in this Court because the United States District Court for the Western District of Wisconsin encompasses La Crosse County, Wisconsin. *See* 28 U.S.C. § 1442(a).

In this action the Complaint alleges various proposed class action claims related to the alleged contamination from release of PFAS containing AFFF used at the Airport. Ex. A ¶¶ 2-4. Specifically, Plaintiffs allege that "[t]he City knew or should have known that harmful and defective products, AFFF containing toxic PFAS components, would be used for various purposes at LSE including, but not limited to, training for firefighting, testing firefighting equipment, actual firefighting, and use in hangar sprinkler fire suppressant systems, which would cause the AFFF to drain into the ground and pollute or contaminate the groundwater beneath the [A]irport and eventually migrate into Plaintiffs' and Class Members' household water supplies." *Id.* ¶ 56. The City's own lawsuit against the manufacturers alleges that it did not have this knowledge and

instead that it was required to use these materials by the FAA. Ex. B. There is significant overlap in these cases, as well as others in the MDL litigation because Plaintiffs are claiming damages from actions taken by the City and the City is claiming that the manufacturers of PFAS are the parties truly at fault and that the City was simply complying with FAA regulations. In addition to jurisdiction for these claims being properly in federal court, there is also a logistical and judicial efficiency reason for removal because this issue is already being litigated in the MDL.

## BASIS FOR FEDERAL JURISDICTION

### I.  Federal Officer Removal (28 U.S.C. 1442(a)(1))

Removal is proper here under the federal officer removal statute. *See* 28 U.S.C. § 1442(a)(1). To establish subject matter jurisdiction under 28 U.S.C. § 1442(a)(1), a defendant must satisfy a three-pronged test: (1) the defendant must be a "person" within the meaning of the statute; (2) the plaintiff's claims are for or related to acts taken by the defendant "acting under" the color of a federal officer; and (3) the defendant must raise a colorable federal defense. *See Ruppel v. CBS Corp.*, 701 F. 3d 1176, 1181 (7th Cir. 2012).

#### a.  Removal under § 1442(a)(1) Is Liberally Construed

Removal rights under § 1442(a)(1) are much broader than the general removal statute found under § 1441. Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 431 (1999). This is because § 1442 protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prod.*, No. 11 CIV. 5990 BSJ, 2011 WL 5109532, *3 (S.D.N.Y. Oct. 21, 2011) (citation omitted). There should not be a "narrow, grudging interpretation of § 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969).

8

Indeed, the statute should be "liberally construe[d]" in favor of removal. *Caver v. Cent. Alabama Elec. Coop.*, 845 F.3d 1135, 1142 (11th Cir. 2017) (citing *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 147 (2007)).

      **b.     The City is a "Person" within the Meaning of § 1442(a)(1)**

The first prong of the test requires that the City show it is a "person" within the meaning of the statute. *Ruppel*, 701 F.3d at 1181. For purposes of § 1442(a)(1), the term "person" includes "companies, associations, firms, [and] partnerships . . ." *Papp f. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016); *see also Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135-136 (2d Cir. 2008) (holding that a non-natural entity is a "person" for purposes of § 1442(a)(1)). In the context of air commerce and safety, 49 U.S.C. § 40101 to 46507, the term "person" explicitly includes a governmental authority. *See, e.g.*, 49 U.S.C. § 40102(37) ("person includes . . . a governmental authority and a trustee, receiver, assignee, and other similar representative").

The City of La Crosse has been sued in its capacity as a city for actions taken at the Airport. The Airport is owned by the City and is operated by the City's Aviation Board and the City's Common Council. Turner Dec. ¶¶ 3, 7; *see also* Ex. A ¶ 29 ("[t]he City owns and operates the La Crosse Regional Airport"). The City of La Crosse, as the Airport's owner, is a "person" under federal statutes governing air commerce and safety and, as such, has satisfied the first part of the test necessary to remove the case under 28 U.S.C. § 1442(a)(1).

      **c.     The City of La Crosse Acted Under Color of Federal Authority**

To satisfy the next part of the test, the party must demonstrate that it performed the actions for which it is being sued under color of federal office. *Ruppel*, 701 F.3d at 1181. The language of this section should be interpreted broadly, and "the statute as a whole must be liberally construed." *Isaacson*, 517 F.3d at 136.

9

Essentially, to satisfy this prong, the removing party must show it is being sued because of the acts it performed at the direction of the federal officer. *Bennett v. MIS Corp.*, 607 F.3d 1076, 1088 (6th Cir. 2010); *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 153-154 (2007). "[T]here must be a 'causal connection between the charged conduct and asserted official authority.'" *Ruppel*, 701 F.3d at 1181 (quoting *Jefferson Cnty., Ala.*, 527 U.S. at 431, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999)). In *Ruppel*, the Seventh Circuit found that a company that used asbestos in its turbines supplied to the Navy was "act[ing] under color of federal authority" because it was those federally required actions that formed the gravamen of the plaintiff's complaint. 701 F.3d at 1181. Here, the City's airport serves air carriers with aircraft with more than 30 seats and therefore is required by 49 U.S.C. § 44706 to obtain an airport operating certificate from the FAA. Turner Dec. ¶¶ 9-10, Ex. 2. This certificate, referred to as a Part 139 certificate, requires the airport to operate in accordance with federal operational and safety standards set forth in 14 CFR Part 139. *Id.* ¶¶ 11-12. As a Part 139 certified public use airport since the early 1970s, the Airport has responsibilities and mandatory obligations to the federal government. The Airport was obligated to require its personnel to train with AFFF, calibrate and test its AFFF firefighting equipment (equipment testing), respond to aircraft emergencies with AFFF, and follow the FAA's regulatory mandates to use AFFF that meets federal military specifications (MIL-SPEC) that must include PFAS (*see* 14 CFR § 139.317). *Id.* ¶¶ 13-14. The FAA's involvement goes beyond mere regulation and by its nature acts to transform the City's firefighting force at the airport into a federally controlled entity which is required to use AFFF with PFAS. For example, the Airport is required, pursuant to its FAA required Airport Manual, to have the AFFF and perform regular testing "when requested by the FAA." Turner Dec., Ex. 5, § F.

On April 1, 2021, the City sent a letter (the "Letter") to Jim Keefer, the Acting Director of the Great Lakes Region of the FAA, requesting an exemption from the use of AFFF containing PFAS. Declaration of Stephen F. Matty ("Matty Dec.") at ¶ 2, Ex. 1. The Letter petitioned the FAA for an exemption from the requirement that LSE use fluorinated firefighting foam, which contains PFAS. *Id*. at ¶ 3, Ex. 1. Specifically, the City requested an exemption of the requirements of 14 CFR Part 139.317(j), which requires the use of fluorinated firefighting foam complying with Military Specification, Mil-F-24385F, through Advisory Circular 150/5210-6D – *Aircraft Fire Extinguishing Agents*. *Id*. at ¶ 4, Ex. 1. As a substitute, LSE proposed utilizing fluorine free firefighting foam. *Id*.

In response to the Letter, on June 23, 2021, the FAA convened a meeting (the "Meeting"). *Id*. at ¶ 5. On behalf of the City, the meeting was attended by the City Attorney, the City Mayor, and LSE Airport Director Ian Turner. *Id*. On behalf of the FAA, the meeting was attended by James Keefer (Acting Director - Airports Division of the Great Lakes Region), Susan Mowery-Schalk (Airports Division of the Great Lakes Region), Denson Stasher (Manager of Airport Safety and Standards of the Great Lakes Region), Birkely Rhodes (Manager of FAA Airport Safety and Operations Division), Attorney Jack Williams, Lem Thomas (Manager, Environmental Law Policy Branch – Office of Chief Counsel), Keith Bagot (Airport Safety Specialist) and Tony Butters (Deputy Manager, Airport Safety and Operations Division). *Id*. The FAA representatives at the meeting informed the City representatives that the FAA would not grant the City's requested exemption because the City failed to identify a fluorine free firefighting foam that would perform the same as or better than the fluorinated firefighting foam complying with Military Specification, Mil-F-24385F, through Advisory Circular 150/5210-6D – *Aircraft Fire Extinguishing Agents*. *Id*. at ¶ 6. The FAA representatives further informed the City representatives that the FAA had been

11

attempting to identify and resource such a foam for several years but had yet to identify and resource such a foam. *Id*. The FAA representatives admitted that no such fluorine free firefighting foam that could meet the specifications existed. *Id*. Because the FAA did not approve the City's request, LSE was required to continue using the fluorinated firefighting foam. *Id*.

Similar to the turbine manufacturer in *Ruppel*, the City is doing what it is directed to do by the federal government (even over its own objection) and is now being sued for those actions. The Complaint alleges the City caused PFAS contamination at issue by training with PFAS containing AFFF at the Airport, testing equipment used with PFAS containing AFFF at the Airport, and responding to fires and emergencies at and around the Airport with PFAS containing AFFF. Ex. A ¶¶ 10-13. The City used AFFF containing PFAS to perform these activities at the Airport because the FAA mandated that City of La Crosse take such actions. AFFF use and testing required by FAA at the Airport forms the basis of Plaintiffs' allegations of PFAS contamination in the lawsuit; accordingly, there is a sufficient "causal nexus" between the actions taken by the City "under color of federal office" and the injuries Plaintiffs have alleged in the Complaint.

### d.     The City of La Crosse Has Raised a Colorable Federal Defense

To satisfy the third and final prong of the test, the party must show it has raised a colorable federal defense. *Ruppel*, 701 F.3d at 1181-82. The City intends to raise the government contractor defense as a federal defense to this Complaint. The government contractor defense requires that: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988).

With respect to the first requirement, the United States requires airports that serve air carriers with aircraft with more than 30 seats to obtain an airport operating certificate from the FAA. 49 U.S.C. § 44706. To obtain an FAA operating certificate, airport operators must employ aircraft rescue and firefighting equipment containing AFFF. *See* 14 CFR § 139.317. The AFFF must meet the federal standards defined in MIL-SPEC document Mil-F-24385F. Turner Dec., Ex. 4. MIL-SPEC specifications required the use of AFFF with PFAS, and the current iteration requires the AFFF achieve standards that can only be met with AFFF containing PFAS.[7] These requirements established by the FAA meet the first requirement of the government contractor defense.

With respect to the second requirement, the City is the owner and operator of the La Crosse Municipal Airport, which operates under a Part 139 Certificate issued by the FAA. Turner Dec., Ex. 2. It first received this operating license on May 21, 1973, and was most recently reissued the license on August 19, 2005. *Id*. In order to operate its airport, the City was required to comply with the firefighting and rescue requirements established by the FAA. Not only was AFFF with PFAS required by the FAA for the City to obtain its operating certificate, but AFFF with PFAS was also required by FAA to be utilized in the firefighting trainings, equipment testing, FAA inspections, and in response to emergencies in the City – precisely the activities complained of in the Plaintiffs' Complaint.

As to the third requirement for the government contractor defense, a "defendant is not required to warn 'the government where the government knew as much or more than the defendant

---

[7] After "years of research and testing," the Department of Defense ("DoD") has thus far approved only one fluorine free foam product that satisfies the current MIL-SPEC, and FAA approved that product for use at Part 139 airports on September 13, 2023 (shortly before this lawsuit was filed). *See* FAA Part 139 CertAlert No. 23-07 (September 13, 2023), https://www.faa.gov/sites/faa.gov/files/part_139_cert_alert_23_07_F3_Release.pdf

13

contractor about the hazards of the product.'" *Albrecht,* 2011 WL 5109532, at *5 (citation omitted). The federal government here certainly knew or had the opportunity to know more than the City regarding any product-related dangers of AFFF. *Boyle*, 487 U.S. at 512. As early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from firefighting exercises are considered to have adverse effects environmentally."[8] In 2011, officials at the DoD's program for emerging chemicals of environmental concern issued a non-binding risk alert regarding PFAS-containing AFFF.[9] More recently, in a 2017 report to Congress, the DoD acknowledged that AFFF containing PFAS was concerning but that it was a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires."[10] None of these facts were shared with the City and they show that the federal government knew the hazards of AFFF already, or at least knew more than the City, and regardless required airports including the City to continue to use this AFFF containing PFAS pursuant to the federal MIL-SPEC. *See Albrecht*, 2011 WL 5109532, at *5.

      Thus, the City has shown a colorable federal government contractor defense because: (1) the City was provided the specifications for the required AFFF with PFAS by the federal

---

[8] *See* Edward S. K. Chian et al., Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of its Active Ingredients 1 (Oct. 1980), https://apps.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

[9] *See* Evaluation of [DoD's] Actions to Control Contaminant Effects from Perfluoroalkyl and Polyfluoroalkyl Substances at [DoD] Installations (July 23, 2021), https://www.dodig.mil/reports.html/article/2705951/evaluation- of-the-department-of-defenses-actions-to-control-contaminant-effects/#:~:text=EC%20Program%20officials%20issued%20a%20risk%20alert%20in,by%20the%20Emerging%20Chemicals%20of%20Concern%20Governance%20Council.

[10] Dep't of Defense, Aqueous Film Forming Foam Report to Congress 1-2 (Oct. 2017)(pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

14

government and was required to use that AFFF under 14 CFR § 139.317; (2) the City used AFFF in the trainings, equipment testing, and emergency response actions at the Airport which conformed to those federal specifications and therefore contained PFAS; and (3) the federal government was already informed about the AFFF product-related PFAS dangers. *See Boyle*, 487 U.S. at 512.

## II.   Federal Question and Complete Preemption (28 U.S.C. 1441(c))

This Court also has jurisdiction over this Complaint pursuant to 49 U.S.C. § 14501(c) and 49 U.S.C. 41713(b) because (1) Plaintiffs' claims raise substantial questions of federal law, and (2) the FAA in mandating the use of AFFF containing PFAS extinguishing agents at the Airport has completely preempted Plaintiffs' state laws claims. As discussed above, the City was required by the FAA to use PFAS containing AFFF at the Airport. The FAA's regulation on this issue has completely preempted any local authority when it comes to airport operation safety and firefighting and protection. Further, the resolution of Plaintiffs' complaint necessarily relies upon resolution of whether the FAA's requirement for use of the AFFF product relieves the City of any potential liability. As such, this Court has jurisdiction.

### a.   The FAA Has Completely Preempted any State Law Claims related to PFAS Use at Airports such as LSE

Generally, where a plaintiff has not asserted a federal cause of action, removal under 28 U.S.C. § 1441(c) is not permitted. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). However, there is an exception to this general rule where "a federal statute wholly displaces the state-law cause of action through complete pre-emption." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207-208 (2004) (citing *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003)). "This is so because when the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality

based on federal law." *Id.* (internal quotation marks omitted). "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393.

"[F]ederal jurisdiction attaches when federal law creates the cause of action asserted." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374, 383, 136 S.Ct. 1562, 194 L. Ed. 2d 671 (2016). The creation test "accounts for the vast bulk of suits that arise under federal law." *Gunn v. Minton*, 568 U.S. 251, 257, 133 S.Ct. 1059, 185 L. Ed. 2d. (2013). But there are two exceptions to the well-pleaded complaint rule: (1) the state-law claims are artfully pleaded/completely preempted by federal law and (2) the state-law claims necessarily raise a substantial, disputed federal question. *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1203–04 (10th Cir. 2012).

Complete preemption applies when "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar*, 482 U.S. at 393 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 95 L. Ed. 2d 55 (1987)). When this happens, the state-law cause of action becomes "purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of" the federal law. *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 23, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983). Upon the doctrine's proper invocation, "a complaint alleging only a state law cause of action may be removed to federal court on the theory that federal preemption makes the state law claim 'necessarily federal in character.'" *Schmeling v. NORDAM*, 97 F.3d 1336, 1339 (10th Cir. 1996) (quoting *Metro. Life Ins. Co.*, 481 U.S. at 634).

16

To determine whether a state-law claim is completely preempted by federal law, the Court applies a two-step analysis: "first, we ask whether the federal question at issue preempts the state law relied on by the plaintiff; and second, whether Congress intended to allow removal in such a case, as manifested by the provision of a federal cause of action." *Dutcher v. Matheson,* 733 F.3d 980, 985-6 (10th Cir. 2013). Because the first prong implicates the merits of an ordinary preemption defense, which cannot support removal, the removal analysis begins with the second prong. *See Metro. Life*, 481 U.S. at 66 ("[T]he touchstone of the federal district court's removal jurisdiction is not the 'obviousness' of the pre-emption defense but the intent of Congress.").

In this case, Plaintiffs' claims have been implicitly preempted by federal law; specifically, 49 U.S.C. § 14501(c) and 49 U.S.C. 41713(b), which provides for the FAA to have authority over regulating airports and aviation. Circuits that have considered the question have generally determined that the FAA serves to fully occupy the field of aviation safety. *See Montalvo v. Spirit Airlines*, 508 F.3d 464, 473-74 (9th Cir. 2007); *Greene v. B.F. Goodrich Avionics Sys., Inc.*, 409 F.3d 784, 794-95 (6th Cir. 2005); *Abdullah v. Am. Airlines*, 181 F.3d 363, 367-68 (3rd Cir. 1999); *French v. Pan Am Exp., Inc.*, 869 F.2d 1 (1st Cir. 1989); *Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 220 (2d Cir. 2008). The FAA regulations discussed above, which are required for the Airport to operate, similarly preempt any state law on this issue.

In *Cuomo*, the Second Circuit noted, "the FAA 'was passed by Congress for the purpose of centralizing in a single authority—indeed, in one administrator—the power to frame rules for the safe and efficient use of the nation's airspace.'" 520 F.3d at 224 (quoting *Air Line Pilots Ass'n, Int'l v. Quesad*a, 276 F.2d 892, 894 (2d Cir. 1960)). The Second Circuit explained that "Congress and the Federal Aviation Administration have used this authority to enact rules addressing virtually

all areas of air safety," and that "this power extends to . . . airport runways." *Id.* at 224-25 (citation omitted).

In this case, Plaintiffs' claims directly relate to the FAA's required use of PFAS containing AFFF at the La Crosse Regional Airport. The FAA mandated the use of PFAS containing AFFF in order for the Airport to operate. Because such use was within the scope of the complete preemption that the FAA has with respect to aviation, specifically the operation of airports, safety related thereto, and firefighting requirements, the City is entitled to remove this case to federal court.

### b. The City is Entitled to Remove this Case because it turns on Substantial Questions of Federal Law and the FAA's Required use of PFAS Containing AFFF

The Supreme Court has instructed that "a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312, 125 S. Ct. 2363, 2367, 162 L. Ed. 2d 257 (2005). This is true "[e]ven though state law creates [a plaintiff's] causes of action" because a "case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Bd.*, 463 U.S. at 13.

The Supreme Court set out the standard for substantial question jurisdiction in *Grable*. The Court explained that the relevant question is, "does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. Here, the FAA's requirement that the Airport use PFAS containing AFFF necessarily implicates a question under federal law as to whether the

18

City's compliance with that requirement relieves it of liability for the claims brought by Plaintiffs. The federal government has mandated the use of PFAS, the Airport complied with that mandated action by the federal government, and Plaintiffs have now sued the Airport for that compliance. As such, this issue is one that should be resolved in federal court.

## CONCLUSION

All of the requirements of 28 U.S.C. § 1442(a)(1) and 28 U.S.C. 1441(c) are satisfied here; accordingly, this action is removable to this Court. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being submitted for filing to the Clerk of the La Crosse Circuit Court, and is being served upon Plaintiffs.

**WHEREFORE**, Defendant CITY OF LA CROSSE hereby gives notice of removal of this action now pending against it in the Circuit Court of the State of Wisconsin, La Crosse County.

Dated this 6th day of December, 2023.

> von BRIESEN & ROPER, s.c.
>
> By: *s/ Joseph M. Russell*
> Joseph M. Russell
> 411 E. Wisconsin Avenue, Suite 1000
> Milwaukee, WI 53202
> Phone: (414) 287-1414
> joseph.russell@vonbriesen.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2023, I electronically transmitted the foregoing Notice of Removal to the Clerk's Office using the CM/ECF system for filing and delivered a copy of the foregoing via United States Mail and email to the following:

**FITZPATRICK, SKEMP & BUTLER, LLC**
Timothy S. Jacobson, WI Bar No. 1018162
1123 Riders Club Rd
Onalaska, WI 54650
608.784.4370
tim@fitzpatrickskemp.com

**SINGLETON SCHREIBER, LLC**
Kevin S. Hannon, WI Bar No. 1034348
Joseph A. Welsh (Pending Pro Hac Vice)
1641 Downing Street
Denver, CO 80218
Ph: (720)704-6028
khannon@singletonschreiber.com

Paul Starita (Pending Pro Hac Vice)
SINGLETON SCHREIBER, LLC
591 Camino de la Reina #1025
San Diego, CA 92108
Ph: (720)704-6028
pstarita@singletonschreiber.com

DATED:  December 6, 2023

                                               von BRIESEN & ROPER, s.c.

                                               By:  *s/ Joseph M. Russell*
                                                     Joseph M. Russell
                                                     411 E. Wisconsin Avenue, Suite 1000
                                                     Milwaukee, WI  53202
                                                     Phone:  (414) 287-1414
                                                     joseph.russell@vonbriesen.com